UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | ) | |
|---|---|---|
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:14-CV-1805 RLW |
| | ) | |
| v. | ) | |
| | ) | |
| PDX, INC., and LANDMARK DATA, INC. | ) | |
| n/k/a NATIONAL HEALTH INFORMATION | ) | |
| NETWORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' motions for summary judgment (ECF Nos. 82, 150). These matters are fully briefed and ready for disposition.

## BACKGROUND

In the underlying action, Jean Pendino and Paul Pendino, as Next Friend of Minor Paul Pendino, Jr. filed suit against Wal-Mart Stores, Inc. ("Wal-Mart") in the St. Louis City Circuit Court, Missouri ("Circuit Court") in Cause Number 012-00491 (hereinafter "Underlying Suit"). (ECF No. 84-1). In the Underlying Suit, Pendino sought damages allegedly resulting from Wal-Mart's failure to warn that ingestion of the drug "Tegretol" during pregnancy could adversely affect a fetus. Pendino's mother ingested Tegretol from April 1994 through October 1996, when Paul Pendino, Jr. was born with disabilities including spina bifida. The Pendinos alleged that Wal-Mart filled Jean Pendino's prescriptions for Tegretol. Defendants PDX, Inc. ("PDX") and Landmark Data, Inc. n/k/a National Health Information Network, Inc. ("NHIN") were not named as parties in the Underlying Suit.

During discovery of the Underlying Suit, Wal-Mart identified Medi-Span as its supplier of patient drug education monograph inserts for Tegretol. Thereafter, Wal-Mart, while denying liability, settled the Pendinos' underlying lawsuit. Following the settlement of the Underlying Suit, Wal-Mart filed lawsuits seeking contributions from Medi-Span, Inc. and its successors: First DataBank, Inc. and Wolters Kluwer Health, Inc. Wal-Mart alleged that "Medi-Span distributed monographs to Wal-Mart pharmacies which were provided to each customer, including Jean [Pendino], who obtained prescriptions at Wal-Mart during [the period 1994 through 1997]." (ECF No. 84-3, ¶¶8-22). This suit was dismissed by Wal-Mart and other similar actions were dismissed by the Court or by Wal-Mart.

Sometime in 2008, Wal-Mart and the Pendinos entered into an Addendum of their Settlement Agreement (Addendum to Full and Final Release). (ECF No. 18, ¶14). Wal-Mart sought to have the original Settlement Agreement reformed to include the terms and conditions of the Addendum. This request was denied by the trial court. (ECF No. 16-2). The Circuit Court ruled that the Addendum was a separate, distinct and enforceable agreement and, therefore, it follows that it was unnecessary to "reform" the 2004 release. The Circuit Court further held "[t]he addendum is supported by consideration, i.e., the 10% contingent share of any recovery…" (ECF No. 16-2).

This lawsuit followed.

## DISCUSSION

I. **MOTIONS FOR SUMMARY JUDGMENT**

### A. Motion for Summary Judgment Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Finally, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson*, 643 F.3d at 1043 (citing *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir.

2010), *citing Wallace v. DTG Operations, Inc.,* 442 F.3d 1112, 1118 (8th Cir. 2006), *and quoting Berg v. Norand Corp.,* 169 F.3d 1140, 1144 (8th Cir. 1999)).

### B. Discussion

Wal-Mart seeks contribution from Defendants based upon the Addendum to a Settlement Agreement.

"The right to contribution is based upon the 'principle of fairness' and was historically a remedy afforded in equity, although subsequently enforced at law under a variety of theories such as assumpsit and quasi contract to rectify unjust enrichment." *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727, 730 (Mo. 1982) (citations omitted). "When two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them". *Safeway Stores, Inc.,* 633 S.W.2d at 730 (quoting Restatement (Second) of Torts § 896A(1) (1965)). "To maintain an action for contribution, both the party seeking contribution and the 'defendant against whom contribution is sought must be ... tortfeasor[s], originally liable to the plaintiff-injured party.'" *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 442 (Mo. 2002) (citing *Safeway Stores, Inc. v. Raytown,* 633 S.W.2d at 730).

"If the party seeking contribution entered into settlement with the original plaintiff, the party must hurdle additional obstacles before being entitled to contribution." *Gramex Corp.*, 89 S.W.3d at 443. Contribution is available to the settling party "only (1) if the liability of the person against whom contribution is sought has been extinguished; and (2) to the extent that the amount paid in settlement was reasonable." *St. Joseph's Hosp. v. Schierman,* 829 S.W.2d 4, 6 (Mo.App.1991) (quoting section 4(b) of the Uniform Comparative Fault Act); *Greenstreet v. Rupert,* 795 S.W.2d 539, 541 (Mo.App.1990) (quoting section 4(b) of the Uniform Comparative Fault Act). Of course, even if a party makes the requisite showing, its right to contribution is

limited to the "proportion of the total sum paid by it to [the injured party] as corresponds to the degree of fault of the third party defendant." *Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 472 (Mo. 1978).

### 1. Debt Paid On Behalf of PDX and/or NHIN Based Upon a Future Recovery

Defendants claim that no debt has been paid on behalf of PDX and/or NHIN. (ECF No. 83 at 4-5). Defendants claim that the language of the Addendum "clearly indicates that that no debt or consideration has ever been paid on behalf of Defendants PDX or NHIN." (ECF No. 83 at 4 (citing ECF No. 20-1)). Defendants claim that the Addendum clearly indicates that the consideration given for the release of these Defendants was contingent on a future recovery; therefore, nothing has yet to be paid on behalf of these Defendants. (ECF No. 83 at 4-5). The Circuit Court's Memorandum and Order held that "[t]he addendum is supported by consideration, i.e., the 10% contingent share of any recovery, …" (ECF No. 83 at 5). Based upon this language, Defendants argue that "nothing has yet to be paid on behalf of these Defendants and thus this case is not ripe for adjudication." (ECF No. 83 at 5). Defendants further assert that the adjudication of the Addendum by the Circuit Court cannot serve as collateral estoppel for the present action. Defendants claim that the issues decided in the prior adjudication were not identical to the issues presented in the present action and, therefore, cannot have collateral estoppel effect. (ECF No. 95 at 4). In fact, the Memorandum and Order from the St. Louis City Circuit Court stated that "nothing herein should be construed as deciding the liability of the intervenor defendants for negligence to Paul Pendino, Jr. The judgment herein is limited to establishing that the addendum releasing their liability to Paul is valid." (ECF No. 95 at 4 (citing ECF 8-1 at 10)).

In response, Wal-Mart claims that this Addendum satisfies a "debt" paid on behalf of the Defendants. Wal-Mart further claims that the Circuit Court's "judgment" regarding the 2008 Addendum requires collateral estoppel effect. (ECF No. 92 at 2-3). Wal-Mart argues that there is nothing contingent about the amount paid by Wal-Mart to release the Defendants. (ECF No. 92 at 4). Wal-Mart argues that a debt has been paid on behalf of Defendants and liability between Defendants and the Pendinos in the Underlying Lawsuit has been extinguished. (ECF No. 92 at 4). Wal-Mart also claims that Defendants' argument that they did not receive a benefit from the Addendum is barred on collateral estoppel grounds. Wal-Mart notes that the Circuit Court held that:

> ... [t]he "Addendum to Full and Final Release" appearing in the record as Plaintiff's Exhibit 20, is a valid and enforceable contract between Plaintiff Wal-Mart, Inc. and Paul Pendino Jr. and that said [A]ddendum is effective to release intervenor defendants PDX and [NHIN] from all liability to Paul Pendino Jr. by reason of the claims alleged in the petition in 22nd Cir. No. 021-00491[.]

(ECF No. 8-1 at 10, ECF No. 9-1).

The Court holds that the Addendum does not have collateral estoppel effect. "Collateral estoppel, or issue preclusion, precludes relitigation of identical issues of fact." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 669 (8th Cir. 2006); *Ebner-Cupples v. Potter*, No. 4:05CV1448 RWS, 2007 WL 541712, at *7 (E.D. Mo. Feb. 16, 2007). The parties were not in the same or similar position in both litigations. Likewise, the issues were not the same in both litigations, as recognized by the Circuit Court, which stated that its Memorandum and Opinion could not be used to prove the liability of Defendants. Nevertheless, the Court cannot hold as a matter of law that Defendants have not benefitted from the settlement of potential claims against them through the Addendum. Any liability between Defendants and the Pendinos in the Underlying Lawsuit has been extinguished. The Court holds that an issue of fact exists regarding whether the debt

has been paid on behalf of PDX and/or NHIN based solely upon the extinguishment of potential claims against them. The Court denies Defendants' Motion for Summary Judgment on this basis.

### 2. Admission of Liability

Defendants claim that they should be granted summary judgment in their favor because Wal-Mart has not admitted liability. Because contribution requires joint tortfeasors, Defendants assert that there can be no liability here where Wal-Mart has not admitted that it is a tortfeasor. Defendants assert that "[i]n failing to admit its status as a tort-feasor [sic] with a duty to compensate the Pendinos, Wal-Mart has simply made a gratuitous payment to the Pendinos, not a payment in excess of its liability." (ECF No. 83 at 7 (emphasis in original)). Defendants further note that Wal-Mart has never alleged in its Complaint that it, or the Defendants PDX and/or NHIN, ever had any duty to the minor Paul Pendino, Jr." (ECF No. 83 at 7). Rather, Defendants assert that Wal-Mart has only alleged a duty to Paul Pendino, Jr.'s mother Jean. (ECF No. 83 at 7). Defendants argue that absent any allegation of a duty to Paul Pendino, Jr. the payment of any consideration by Wal-Mart would have been gratuitous and not subject Defendants to a claim for contribution. (ECF No. 83 at 7).

In response, Wal-Mart refers to several allegations it contends supports its position that it followed the pleading requirements for contribution under Missouri law. (ECF No. 92 at 5-6). For example, Wal-Mart cites allegations in its Complaint that "Wal-Mart is liable to Pendino due to its negligence in failing to warn his mother Jean of the risks of using Tegretol during pregnancy or to recommend that she take folic acid during the period she was trying to conceive…." (ECF No. 92 at 5 (citing Amended Complaint, ECF No. 18, ¶50)). Wal-Mart

alleged that "[t]he Settlement Amount paid solely by Wal-Mart was inequitable in light of the relative fault of Wal-Mart and PDX." (*Id.*, (citing Amended Complaint, ¶53)). Wal-Mart alleged that "[a]ny liability to Pendino should be apportioned between Wal-Mart and PDX based upon their relative fault under the common law and Mo. Rev. Stat. §537.060." (*Id.* (citing Amended Complaint, ¶54). Wal-Mart made similar allegations against NHIN. *See* Amended Complaint, ¶¶72, 75, 76, 77. Wal-Mart contends that it was not required to admit liability in the underlying action and its allegations in this action are sufficient for its contribution claim. (ECF No. 92 at 6).

The Court holds that Wal-Mart's allegations are sufficient for a contribution claim. As explained in the Restatement of Torts, Second, §896A(1) "When two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them." "It is joint liability and not joint judgment which is prerequisite to contribution." *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727, 730 (Mo. 1982) (citing *Whitehead & Kales*, 566 S.W.2d at 469. *See*, Stephenson v. McClure, 606 S.W.2d 208, 213 (Mo. Ct. App. 1980); *Martinez v. Lankster*, 595 S.W.2d 316 (Mo. Ct. App. 1980)). Here, the Pendinos alleged that Wal-Mart and Defendants shared a liability against the Pendinos. Likewise, Defendants clearly received a benefit through the extinguishment of this claim. Thus, the Court finds that Wal-Mart's allegations sufficiently allege a contribution claim.

### 3. Liability of Defendants

Finally, Defendants assert that there is no proximate cause between the alleged acts of the Defendants and the damages claimed by the Pendinos. (ECF No. 83 at 10-13). Defendants

claim that they are not liable to the Pendinos because Defendants did not "provide any patient drug education monographs" to Wal-Mart during the relevant period of 1994-1997. (ECF No. 83 at 9; ECF No. 18, ¶6 (relevant period is 1994-1997) and 10 (Paul Pendino, Jr. was born October 9, 1996); ECF No. 95 at 6-7; ECF No. 151 at 5). Defendants rely on the testimony of Darren Townsen, a representative of Wal-Mart, to argue that the monographs were provided by Medi-Span. (ECF No. 83 at 9-10). Mr. Townsen testified as to contracts entered into between Wal-Mart Stores and any parties relating to referring to the distribution of monographs during the period of 1993 to 1997. (ECF No. 83 at 9-10). Mr. Townsend testified that Medi-Span was the only source of Wal-Mart's monographs "from 1995 to the present date." (ECF No. 83 at 10; ECF No. 95 at 7). Defendants argue that they have no liability to the Pendinos since they did not provide the monographs at issue. Defendants note that Wal-Mart's only response to the testimony of its own representative, Mr. Townsen, was to cite to pleadings and discovery responses filed on behalf of third parties, who are not parties to this lawsuit. (ECF No. 95 at 6). Likewise, these Defendants were not parties to those lawsuits. (ECF No. 95 at 7). Accordingly, Defendants claim that those pleadings are inadmissible hearsay. Thus, Defendants allege "[b]ased on the testimony and discovery responses from this case and from the parties to this case, there is no dispute that the current Defendants did not supply monographs to the Plaintiff during the relevant time period as set forth in Plaintiff's Amended Complaint." (ECF No. 95 at 7).

Defendants further contend that there was no proximate cause between Defendants' acts and the damages claimed by the Pendinos. (ECF No. 83 at 10-14). The Pendinos alleged that Wal-Mart "carelessly and negligently failed to warn Jean of risks and consequences of Tegretol and Diamox use during pregnancy." (ECF No. 83 at 10 (citing Exhibit A, ¶43(a))). Pendino

alleged that Wal-Mart breached its duty of care to him by (a) failing to warn Jean Pendino the risks of Tegretol use during pregnancy; (b) dispensing Tegretol when it knew of Jean Pendino's effort to conceive and/or pregnancy; (c) failing to restrict Jean Pendino from using Tegretol during pregnancy; (d) failing to prescribe an alternative non-tetrgogenic alternative to Tegretol; (e) failing to monitor Jean Pendino's Tegretol use prior to and during pregnancy; (f) failing to prescribe folic acid when Jean Pendino was trying to conceive; and (g) failing to consult with Jean Pendino's doctors to evaluate the risks of Tegretol. (ECF No. 83 at 10-11 (citing Exhibit A, ¶43)). Defendants point out that Pendino did not allege that a monograph given to Jean Pendino regarding Tegretol did not contain an adequate warning. (ECF No. 83 at 11). Rather, Defendants argue that the monograph, even if it had the correct warning, would not have prevented Paul Pendino, Jr.'s injury. Defendants cite to Ms. Pendino's testimony that she did not receive a monograph, or anything to read, with her prescription. (ECF No. 83 at 11-13; ECF No. 95 at 10-12). Defendants maintain that "even a perfect warning" would not have prevented Paul Pendino, Jr.'s injury because Jean Pendino never received a warning. (ECF No. 83 at 13). Defendants claim that the record is clear that Jean Pendino never received, read, or relied on any warning and/or monographs provided by Wal-Mart. (ECF No. 83 at 13). Defendants note that Wal-Mart testified in its interrogatories that "Wal-Mart has concluded its investigation and determined that it has not retained copies of any original information/warning leaflets that may or may not have been given to Jean Pendino." (ECF No. 83 at 13 (citing Exhibit B, #3(f); ECF No. 95 at 7-9). Therefore, Defendants argue that Wal-Mart cannot establish that any monograph or warning was ever actually delivered to Jean Pendino.

In response, Wal-Mart notes that it already sued Medi-Span and learned through discovery that Medi-Span did not provide the monographs at issue. (ECF No. 154 at 2). Medi-

Span stated under oath that First Databank, Inc. was the successor corporation of a Medi-Span and that "[a]ll discovery requests[] regarding the actions or involvement of Medi-Span, Inc., a now defunct corporation, should be directed to First Databank, Inc., as the successor corporation." (ECF No. 92 at 7; ECF No. 154 at 2). Wal-Mart urges that First Databank, the successor of Medi-Span, stated under oath that it had no contractual relationship with Wal-Mart during the relevant time period of 1994 through 1997. (ECF No. 154 at 3). Medi-Span noted that the first contract for services between Wal-Mart and Medi-Span took effect two months after Paul Pendino, Jr. was born. (ECF No. 92 at 8; ECF No. 154 at 3). As a result, a motion for summary judgment was filed in the Medi-Span case on behalf of Medi-Span, Inc., First Databank, Inc., and Wolters Kluwer Health, Inc. (Medi-Span Defendants), stating that "the undisputed facts show that [the Medi-Span Defendants] **did not** supply monographs to Wal-Mart **at any time** before Paul Pendino, Jr.'s birth." (ECF No. 154 at 3 (emphasis in original)). Thereafter, the Medi-Span case was dismissed by Wal-Mart without prejudice. (ECF No. 154 at 4). Now, Defendants argue that Medi-Span should be liable for the monographs at issue in this case. (ECF No. 92 at 9; ECF No. 154 at 4). As a result, Wal-Mart argues that a genuine issue of fact as to whether Defendants in this case provided the monographs to Wal-Mart. (ECF No. 92 at 9). In addition, Wal-Mart notes that PDX provided the electronic system through which monographs were distributed. (ECF No. 92 at 9; ECF No. 154 at 4).

Further, Wal-Mart contends that there is an issue of fact as to whether the monograph was inserted into her prescription. (ECF No. 92 at 9-11). Wal-Mart refers the Court to the Omnibus Budget Reconciliation Act of 1990 ("OBRA 90"), by which a pharmacist must:

> … ask the patient if they have any questions and the information sheet that is given to the patient if they have any questions and the information sheet that is given to the patient has to have the name, the description of the drug, dosage, how

> ... the dosage would be the same as how to take it, and it would list any potential side effects, what to do if there's a misdose.

(ECF No. 92 at 9; ECF No. 154 at 4-5). Wal-Mart notes that its pharmacists relied upon the monographs provided by Defendants and those on the electronic PDX system for any oral/verbal counseling in order to satisfy their standard of care. (ECF No. 92 at 9; ECF No. 154 at 5). Wal-Mart contends that, "[i]n the event that a monograph did not have the proper warnings of interactions with other drugs, ... Plaintiff's pharmacists could not orally advise the customer of any risks." (ECF No. 92 at 10; ECF No. 154 at 5). Wal-Mart maintains that pharmacists relied upon the monographs/data sheets provided by Defendants to keep up to date on the "myriad [of] drugs and interactions." (ECF No. 92 at 10; ECF No. 154 at 5). Wal-Mart claims that even if a customer did not have any questions for the filling of a prescription for a drug, it was Wal-Mart's policy to place the monograph/information sheet in the prescription. (ECF No. 92 at 10; ECF No. 154 at 6). Wal-Mart claims that there is a genuine issue of fact as to whether Wal-Mart provided the monographs to Jean Pendino during the relevant period. (ECF No. 92 at 11). Likewise, Wal-Mart contends there is proximate cause because the monographs and information on the computer system used by Wal-Mart's pharmacists were relied upon by Wal-Mart's pharmacists in counseling customers, including Jean Pendino. (ECF No. 92 at 11; ECF No. 154 at 6-7).

The Court holds that the record demonstrates that there was no proximate cause between Defendants' actions and the injuries to the Pendinos. First, the Court notes that no evidence demonstrates that Defendants provided the monographs at issue during the relevant time period. Defendants claim that they did not provide the monographs and Wal-Mart's own representative likewise testified that Defendants did not provide the relevant monographs. Wal-Mart relies on the testimony of Medi-Span, a third-party to another lawsuit, as an attempt to create an issue of

fact regarding the provider of the monographs. Those documents do not implicate Defendants; those documents only indicate that Medi-Span was not liable. Thus, no admissible evidence supports Wal-Mart's contention that Defendants provided the monographs to Wal-Mart during the relevant period and, as a result, no proximate cause liability can be established.

As an additional reason, the Court holds that there is no proximate cause liability because the undisputed facts are that Jean Pendino did not receive or review the monograph allegedly provided with her Tegretol prescription. Wal-Mart has not disputed that Ms. Pendino did not receive a monograph with her prescription. (ECF No. 95 at 11). Ms. Pendino testified that she did not receive information with the prescription about the drug and its interactions. (ECF No. 95 at 11). Ms. Pendino testified that Wal-Mart should have provided her something "in writing" that she could have read. (ECF No. 95 at 11). Wal-Mart's claim fails as a matter of law because Wal-Mart has not shown that "a warning would have altered the behavior of the individuals involved in the accident." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 762 (Mo. 2011) (citing *Arnold v. Ingersoll-Rand Co.*, 834 S.W.2d 192, 194 (Mo. 1992); *accord Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 14 (Mo. 1994)). "[T]he presumption that plaintiffs will heed a warning assumes that a reasonable person will act appropriately if given adequate information." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 762 (Mo. 2011) (citation omitted). Here, however, the undisputed evidence is that Ms. Pendino was never provided with the "adequate information" or warning because she was not given with any written materials with her prescription. Thus, the Court holds grants summary judgment in favor of Defendants because Wal-Mart cannot, as a matter of law, establish that Defendants' alleged monographs were the cause of the Pendino family's injuries.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment (ECF Nos. 82, 150) are **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 29th day of March, 2017.

                                                                            */s/ Ronnie L. White*
                                                    **RONNIE L. WHITE**
                                                    **UNITED STATES DISTRICT JUDGE**